IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **ZEBA, LLC** § | |
| *Plaintiff*, § | |
| § | **Case No. _____** |
| **v.** § | **JURY** |
| § | |
| **CERTAIN UNDERWRITERS AT** § | |
| **LLOYD'S, LONDON** § | |
| *Defendant*. | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Zeba, LLC ("Plaintiff") complains of Certain Underwriters at Lloyd's, London ("Defendant"), and would respectfully show as follows:

### I.
### PARTIES AND PROCESS SERVICE

1. Plaintiff is a Texas limited liability partnership domiciled in Texas with its principle place of business in Nueces County, Texas. Plaintiff's members are citizens of Texas, and therefore for purposes of diversity jurisdiction, Plaintiff is considered a citizen of Texas.

2. Defendant is a foreign surplus lines insurance company engaging in the business of insurance in Texas, operating for the purpose of accumulating monetary profit. Defendant regularly conducts the business of insurance in a systematic and continuous manner in the State of Texas. For purposes of diversity jurisdiction, Defendant is not considered a citizen of Texas. Defendant may be served with a Summons or a Waiver of Summons process by serving its designated agent for service: Mendes & Mount, 750 Seventh Avenue, New York, New York, 10019-6829.

## II.
## JURISDICTION AND VENUE

3.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds the sum of $75,000.00, exclusive of interests and costs.

4.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this action concerns real property located in Nueces County, Texas, and all or a substantial part of the events giving rise to the claim described herein occurred in Nueces County, Texas. The insurance policy at issue and of which Plaintiff is a beneficiary was to be performed in Nueces County, Texas, and the losses under the policy (including payments to be made to Plaintiff under the policy) were required to be made in Nueces County, Texas.  Further, investigation, including communications to and from Defendant and Plaintiff (including telephone calls, mailings, and other communications to Plaintiff) occurred in Nueces County, Texas.

## III.
## NOTICE AND CONDITIONS PRECEDENT

5.  Defendant has been provided notice, in writing, of the claims made by Plaintiff in this complaint, including Plaintiff's actual damages in the manner and form required.

6.  All conditions precedent necessary to maintain this action under the policy have been performed, occurred, or have been waived by Defendant, or Defendant is otherwise estopped from raising same due to Defendant's prior breach of the insurance contract.

## IV.
## FACTS

### A.  The Property and The Policy.

7.  This is a claim for insurance proceeds for damages caused by Hurricane Harvey. Plaintiff owns certain real property with improvements located at 2930-2960 Santa Fe, Corpus

Christi, TX 78404 (the "Property"), which at the time of Hurricane Harvey were insured by insurance policy no. B0507XEQ3134717 issued by Lloyd's (the "Policy"). The Property is an apartment complex commonly known as the Commodore Apartments and consists of three separate two-story buildings.





**The Property**



**Geographic Location of the Property**

### B. Hurricane Harvey Damage.

8. On or about August 25, 2017, Hurricane Harvey, recognized as one of the most devastating natural disasters in United States history, made landfall on the Texas coast in Aransas County as a Category 4 hurricane. Corpus Christi saw wind speeds up to 90 miles per hour. Hurricane Harvey continued to travel through the southeast part of Texas, inflicting billions of dollars in damages to private and public property. The Texas Division of Emergency Management incurred more than $439 million in costs associated with debris removal, public property damage, and police/EMS response immediately after Harvey. Texas Governor Greg Abbott has estimated that Hurricane Harvey's damages will total an historic $180 billion.



**Hurricane Harvey's Winds**

9. As a result of Harvey's extreme winds, the Property sustained significant damage to its exterior and roofing system through which rain entered the Property causing additional interior damage. The wind forces from Hurricane Harvey caused such extensive damage to the Property's roofing systems that it is now necessary to completely replace the roofing systems. All these damages are covered under the Policy. Prior to Hurricane Harvey, the roofing systems were performing as intended.

### C. The Claim and Defendant's Failures to Properly Handle The Claim.

10. After Hurricane Harvey, Plaintiff made a claim (claim no. PF00064) with Defendant and requested payment for damages to the Property covered by the Policy (the "Claim"). After Plaintiff made the Claim, Defendant failed to comply with the Policy, the Texas Insurance Code and Texas law in handling Plaintiff's claim. Further, Defendant has refused to pay all amounts due and owing under the Policy for the Claim.

11. Although Texas law provides that an insurer has a "non-delegable duty" to responsibly handle claims, delegate its duty is precisely what Defendant did. More specifically, Defendant retained the services of a third-party adjusting company, Vanguard Claims Administration, Inc. ("VCA") and VCA's property examiner Lina R. Newman to administer, investigate and adjust the Claim. VCA in turn engaged Vericlaim, Inc. ("Vericlaim") and its field adjuster Bernie Farnung to assist with the investigation and adjustment of the Claim. At all material times, VCA, Newman, Vericlaim, Farnung and all other persons that participated in the handling of the Claim were acting as agents or employees of Defendant in the course and scope of their agency or employment with Defendant. Accordingly, Defendant is liable for their acts and omissions.

12. Defendant delegates its claims decisions and oversight to third-party adjusters like VCA, Newman and Vericlaim with limited oversight by Defendant. Oftentimes, claims are not even

reported to the actual insurance company until a third-party administrator decides it rises to a level that merits the insurer's attention. In this type of absentee insurer environment, claims standards and guidelines become arbitrary and are routinely outsourced. Adjuster training is deferred, or simply never happens. Financial incentives are turned on their head, as the third-party administrators and adjusters, and the managers who oversee them, are compensated with bonuses and incentives tied to profitability manufactured by claim denials and underpayments. Defendant's absentee structure is such that it is virtually impossible to comply with Texas law concerning claims handling guidelines and the prohibition on delegating these guidelines. But for foreign surplus lines insurance entities shielded by a vacuum of regulatory oversight, delegation to a third-party adjusting company such as VCA (who, upon information and belief, has a lengthy relationship of resolving claims for Defendant accompanied by a significant financial incentive to steer claims away from covered losses, where possible) has become the new normal.

13.     After the Claim was made, Defendant and its agents purported to investigate the Claim.

14.     On March 12, 2018, Defendant (through Vanguard) issued a claim decision letter in which it contended the roofing systems and the carports at the Property were not damaged by wind citing a variety of exclusions in the Policy. Defendant also determined that the Replacement Cost Value for covered damages to other parts of the Property was $38,226.22.

15.     On August 8, 2018, Defendant, (through Vanguard) issued another claim decision letter in which it again contended the roofing systems and the carports were not damage by wind. However, with respect to the covered damages to other parts of the Property, Lloyd's increased the amount of the Replacement Cost Value to $44,687.44.

16.     However, because the Policy carries a deductible of $75,000.00, no payment has been issued for the Claim.

17.     As will be discussed in more detail below, Defendant's determination of damages grossly undervalued the damages the Property suffered due to Hurricane Harvey.

18.     Plaintiff presented a claim under the Policy for Hurricane Harvey damages. It was Defendant's responsibility, not Plaintiff's, to conduct a reasonable and thorough investigation of the Claim to determine the specific cause of the loss and the amount of loss. Although Defendant and its agents are required by Texas law and the Policy to conduct a reasonable and thorough investigation of the Claim, they failed to do so. Rather, Defendant conducted a substandard investigation of the Claim, and failed to determine the full amount of Plaintiff's damages. Defendant's inadequate investigation is demonstrated by its conclusion that the replacement cost value to repair the damages caused to the Property by Hurricane Harvey was $44,687.44.

19.     Defendant's improper handling of the Claim subjects it to liability pursuant to TEX. INS. CODE § 541.001, *et seq.* and TEX. INS. CODE § 542.051, *et seq*. Defendant violated TEX. INS. CODE § 541.060(a) and engaged in Unfair Settlement Practices by:

   a)   Misrepresenting to Plaintiff material facts or policy provisions relating to the coverage at issue. Specifically, Defendant represented to Plaintiff that the amount of structural damage caused to the Property was $44,687.44, when the actual amount of damages is substantially higher. Rather than fully compensate Plaintiff or its losses, Defendant failed to conduct a reasonable and thorough investigation of the claim, and as a result grossly undervalued the amount of Plaintiff's covered losses.

   b)   Failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the Claim, even though Defendant's liability under the Policy was reasonably clear. Defendant acted in bad faith when it ignored the obvious substantial amount of damages to the Property and failed to properly adjust the Claim.

    c)    Refusing to pay Plaintiff's Claim without conducting a reasonable investigation with respect to the Claim. Defendant's investigation was clearly unreasonable because it failed to determine the full amount of Plaintiff's damages, even though the damages were obvious and the true amount of cost to repair the damages was readily ascertainable. Had Defendant conducted a reasonable and thorough investigation of the Claim, it would have determined the actual amount of Plaintiff's covered losses.

Each of the foregoing unfair settlement practices was completed knowingly by Defendant and was a producing cause of Plaintiff's injuries and damages.

20. Further, Defendant violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, et seq. by delaying payment of the Claim following Defendant's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058. Defendant's March 12, 2018 claim decision letter demonstrates Defendant was in receipt of all items, statements, and forms that it would need to make a claim decision before that date. Defendant had full access to the Property and plenty of opportunity to investigate the Claim and determine the actual amount of the structural damage caused by Hurricane Harvey. Thus, because more than 75 days have passed from March 12, 2018 without full payment for the Claim, Defendant has violated the time limits of TEX. INS. CODE §§ 542.058 and 542.059.

### D. Plaintiff is Forced to Adjust Its Own Claim.

21. After Defendant failed to reasonably and thoroughly investigate the Claim, Plaintiff was forced to retain attorneys and its own expert to assist with the Claim. Plaintiff hired Under Paid Claim, LLC ("UPC") to investigate the Claim. UPC is a licensed public adjusting firm. UPC conducted a detailed inspection of the property and determined that the approximate cost to repair the damage caused to the Property by Hurricane Harvey is at least $216,658.80. All the repair costs identified by UPC are covered under the terms and conditions of the Policy.

### E. Plaintiff's Notice Letter and Defendant's Second Bite at the Apple.

22. On June 1, 2017, Governor Abbot signed House Bill 1774 into law as Section 542A of the Texas Insurance Code. This new law was sponsored by approximately sixty state representatives and senators and contains important consumer protections against a variety of unscrupulous practices. Section 542A.003 in particular requires detailed, comprehensive pre-suit notice that is intended to make the claims and litigation processes more transparent and potentially even avoid unnecessary lawsuits. Upon receiving notice, an insurer has a right to conduct an inspection, and even make an offer to avoid litigation. When utilized properly, Section 542A should assist business consumers like Plaintiff to avoid protracted litigation over a clear claim.

23. On November 29, 2018, Plaintiff (through its counsel) sent Defendant a letter notifying Defendant of Plaintiff's claims against Defendant arising under Chapters 541 and 542 of the Texas Insurance Code, as required by TEX. INS. CODE §§ 541.154 and 542A.003 (the "Notice Letter"). The Notice Letter specifically described Defendant's violations of the Texas Insurance Code, using language substantially identical to the allegations contained in this pleading. Further, the Notice Letter provided a comprehensive outline of Plaintiff's claims and damages, and quantified Plaintiff's losses on the Claim (by presenting the detailed expert report and photos from UPC).

24. Defendant never acknowledged nor responded to Plaintiff's Notice Letter. Even though almost a year and a half has passed since Hurricane Harvey damaged the Property, and even though Plaintiff has now fully adjusted the Claim for the Defendant and provided Defendant all that it needs to make a decision on the Claim, Defendant has still not honored its obligations

*Zeba, LLC v. Certain Underwriters at Lloyd's, London*                                                                                              Page 9
Plaintiff's Original Complaint

under the Policy. Defendant has been given a second bite at the apple and has still failed Plaintiff.

### F. Defendant's Insurance Code Violations.

25. Defendant failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, Defendant refused to pay for damages owed under the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property and all conditions precedent to recovery upon the Policy in question had been satisfied by Plaintiff. Defendant's conduct constitutes a breach of the insurance contract between Defendant and Plaintiff.

26. Defendant misrepresented to Plaintiff that damage to the Property was not covered under the Policy, even though the damage was covered by the Policy. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(1).

27. Defendant failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's Claim, when Defendant's liability was reasonably clear. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(2)(a).

28. Defendant failed to explain to Plaintiff the reasons for its offer of an inadequate settlement/claim denial. Specifically, Defendant failed to offer Plaintiff adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendant did not communicate that any future settlements or payments would be forthcoming to pay for the entire loss covered under the Policy, nor did Defendant provide any explanation for the failure to adequately settle Plaintiff's claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(3).

29. Defendant failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendant. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(4)(A).

30. Defendant refused to fully compensate Plaintiff for the Claim without conducting a reasonable investigation of the Claim. Rather, Defendant performed an unreasonable outcome-oriented investigation of Plaintiff's Claim, which resulted in a biased, unfair and inequitable evaluation of Plaintiff's Claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §541.060(a)(7).

31. Defendant failed to meet its obligations under the Texas Insurance Code regarding the timely acknowledgement of Plaintiff's Claim, beginning an investigation of Plaintiff's Claim and requesting all information reasonably necessary to investigate Plaintiff's Claim within the statutorily mandated time of receiving notice of Plaintiff's claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §542.055.

32. Defendant failed to accept or deny Plaintiff's full and entire Claim within the statutorily mandated time of receiving all necessary information. Defendant's conduct constitutes a violation of TEX. INS. CODE §542.056.

33. Defendant failed to meet its obligations under the Texas Insurance Code regarding payment of claims without delay. Specifically, Defendant has delayed full payment of Plaintiff's Claim longer than allowed and, to date, Plaintiff has not yet received full payment for Plaintiff's Claim. Defendant's conduct constitutes a violation of TEX. INS. CODE §542.058.

34. From and after the time Plaintiff's Claim was presented to Defendant, the liability of Defendant to pay the full Claim in accordance with the terms of the Policy was reasonably clear.

However, Defendant has refused to pay Plaintiff in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied on to deny the full payment. Defendant's conduct constitutes a breach of the common law duty of good faith and fair dealing.

35. Defendant knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed material information from Plaintiff.

36. Because of Defendant's wrongful acts and omissions, Plaintiff was forced to retain the professional services of the law firm who is representing Plaintiff with respect to these causes of action.

37. In summary, Defendant has failed to comply with the Policy, the Texas Insurance Code, and Texas Law in handling the Claim, and has failed to pay all amounts due and owing under the Policy for the Claim. Defendant and its representatives failed to perform a thorough investigation of Plaintiff's Claim, failed to employ appropriate or qualified consultants to evaluate the damages, delayed resolution of the Claim under Texas law, and misrepresented applicable scopes of damages as well as the terms of the Policy. Further, Defendant's outcome-oriented investigation of Plaintiff's Claim resulted in a biased, unfair, and inequitable evaluation of Plaintiff's loss intended to construct a pretextual basis for the denial or underpayment of Plaintiff's Claim. Adjusters employed by Defendant violated the law through their own acts and omissions in the handling of the Claim. Because of these violations of law and wrongful conduct, Plaintiff has sustained and continues to sustain significant damages, including but not limited to property damage, diminution of property value, attorney's fees, financial harm, and other consequential damages.

## V.
## CAUSES OF ACTION

38. Plaintiff incorporates all of the aforementioned facts into its causes of action below for all purposes. Defendant is liable to Plaintiff for breach of contract, as well as intentional violations of the Texas Insurance Code and breach of the common law duty of good faith and fair dealing.

### A. Breach of Contract.

39. The Policy is a valid, binding and enforceable contract between Plaintiff and Defendant. Defendant breached the contract by refusing to perform its obligations under the terms of the Policy and pursuant to Texas law. Defendant's breach proximately caused Plaintiff injuries and damages. All conditions precedent required under the Policy have been performed, excused, waived or otherwise satisfied by Plaintiff, or Defendant is estopped from raising the issue due to Defendant's prior breach of the insurance contract.

### B. Noncompliance With Texas Insurance Code: Unfair Settlement Practices.

40. The conduct, acts, and/or omissions by Defendant constituted Unfair Settlement Practices pursuant to TEX. INS. CODE. § 541.060(a). All violations under this article are made actionable by TEX. INS. CODE § 541.151.

41. Defendant's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(1).

42. Defendant's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Defendant's liability under the Policy was reasonably clear, constitutes an unfair method of competition and

an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(2)(A).

43. Defendant's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(3).

44. Defendant's unfair settlement practice, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(4).

45. Defendant's unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(7).

46. Defendant's conduct described above compelled Plaintiff to initiate a lawsuit to recover amounts due under its policy by offering substantially less than the amount ultimately recovered. Defendant's continued failure to properly handle the Claim compelled Plaintiff to file suit. TEX. INS. CODE § 542.003(b)(5).

**C. Prompt Payment of Claims Violations.**

47. The Claim is a claim under an insurance policy with Defendant of which Plaintiff gave Defendant notice. Defendant is liable for the Claim. Defendant violated the prompt payment of claims provisions of TEX. INS. CODE § 542.051, *et seq.* by:

a) Failing to acknowledge receipt of the Claim, commence investigation of the Claim, and/or request from Plaintiff all items, statements, and forms that Defendant reasonably believed would be required within the time constraints provided by TEX. INS. CODE § 542.055;

b) Failing to notify Plaintiff in writing of its acceptance or rejection of the Claim within the applicable time constraints provided by TEX. INS. CODE § 542.056; and/or by

c) Delaying payment of the Claim following Defendant's receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided by TEX. INS. CODE § 542.058.

48. Defendant's violations of these prompt payment of claims provisions of the Texas Insurance Code are made actionable by TEX. INS. CODE § 542.060.

### D.  Breach of The Duty of Good Faith and Fair Dealing.

49. Defendant breached the common law duty of good faith and fair dealing owed to Plaintiff by denying or delaying payment on the Claim when Defendant knew or should have known that its liability to Plaintiff was reasonably clear. Defendant's conduct proximately caused Plaintiff injuries and damages.

## VI.
## KNOWLEDGE

50. Defendant's acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiff's damages described herein.

## VII.
## DAMAGES

51. Plaintiff will show that all the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

52. For breach of contract, Plaintiff is entitled to regain the benefit of Plaintiff's bargain, which is the amount of Plaintiff's Claim, together with attorney fees.

53. For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include but are not limited to, the loss of the benefits that should have been paid pursuant to the Policy, court costs and attorney's fees. For knowing conduct of the acts complained of, Plaintiff asks for three times Plaintiff's actual damages. TEX. INS. CODE § 541.152.

54. For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of Plaintiff's Claim, as well as a statutory interest penalty calculated per annum based on the amount of Plaintiff's Claim, and with attorney's fees. TEX. INS. CODE §542.060.

55. For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional distress.

56. For the prosecution and collection of this claim, Plaintiff has been compelled to engage the services of the law firm whose names are subscribed to this pleading. Therefore, Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorneys in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas.

## VIII.
## JURY DEMAND

57. Plaintiff hereby requests a jury trial and tenders the appropriate jury fee.

# IX.
# PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon trial hereof, Plaintiff has and recovers such sums as would reasonably and justly compensate Plaintiff in accordance with the rules of law and procedure, both as to actual damages, statutory penalties and interest, treble damages under the Texas Insurance Code and all punitive and exemplary damages as may be found. In addition, Plaintiff requests the award of attorney's fees for the trial and any appeal of this case, for all costs of Court on its behalf expended, for pre-judgment and post-judgment interest as allowed by law, and for any other and further relief, either at law or in equity, to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

**LUNDQUIST LAW FIRM**

*/s/ William W. Lundquist*
William W. Lundquist
So. Dist. Texas No. 38019
Texas Bar No.: 24041369
743 W. 18th Street
Houston, TX 77008
Will@LundquistLawFirm.com
Telephone: (832) 255-3014
Facsimile: (713) 583-5586

ATTORNEY-IN-CHARGE FOR PLAINTIFF

*Zeba, LLC v. Certain Underwriters at Lloyd's, London*     Page 17
Plaintiff's Original Complaint